UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**STEWART ENTERPRISES, INC et al.**                                **CIVIL ACTION**

**VERSUS**                                                          **No. 07-4514**

**RSUI INDEMNITY COMPANY, INC.**                                    **SECTION I/1**

## ORDER AND REASONS

Before the Court are two related motions for partial summary judgment. The first motion, filed by defendant, RSUI Indemnity Company, Inc. ("RSUI"), seeks a declaration that Stewart is limited to recovery for damages caused exclusively by wind.[1] The second motion, filed by plaintiff, Stewart,[2] seeks a declaration that the anti-concurrent causation clause ("ACC clause") contained in Stewart's insurance policies is ambiguous and that the same ACC clause does not preclude recovery for damage to Stewart's property caused by wind prior to the arrival of any flood.[3] Each party has filed a response brief to the other party's motion.[4] Furthermore, RSUI has filed a reply brief to Stewart's response to its (RSUI's) motion,[5] and Stewart has filed a surreply to RSUI's reply. For the following reasons, the motions are both **DENIED** and the

---

[1] R. Doc. No. 117.

[2] The Court's reference to "Stewart" encompasses plaintiffs Stewart Enterprises, Inc.; S.E. Cemeteries of Louisiana, Inc.; S.E. Funeral Homes of Louisiana, Inc.; S.E. South-Central, Inc.; Lake Lawn Park, Inc.; Lake Lawn Metairie, Funeral Home; Stewart Resource Center, Inc.; Stewart Services, Inc.; and Acme Mausoleum Corporation.

[3] R. Doc. No. 122.

[4] R. Doc. Nos. 131, 134.

[5] R. Doc. No. 150-4.

1

Court makes findings with respect to the proper interpretation of the disputed policy provisions.

## *BACKGROUND*

For purposes of these motions for partial summary judgment, the following facts are pertinent, including certain facts which neither party disputes.[6] Stewart owns various cemeteries, funeral homes, and other commercial properties throughout the New Orleans metropolitan area. Stewart initiated this lawsuit on August 27, 2007, seeking damages pursuant to a second excess layer insurance policy issued by RSUI.

At the time of Hurricane Katrina, Stewart's primary layer of property insurance was provided by Lexington Insurance Company ("Lexington") under policy number 8753559 (the "Lexington policy"), with a primary limit of $10,000,000. Meanwhile, Stewart's first excess layer of coverage was provided by Certain Underwriters at Lloyd's, London ("Lloyd's"), under policy number BO664223406A04 (the "Lloyd's policy"), with participation of $15,000,000 excess of the $10,000,000 primary limit. Stewart's second excess layer of coverage was provided by RSUI under policy number LHD338080 (the "RSUI policy") with participation of $225,000,000 excess of the $25,000,000 primary and first excess limits.

On August 29, 2005, Hurricane Katrina made landfall and damaged a number of Stewart's buildings and personal property at its facilities. Stewart alleges that it sustained property damage, business interruption, extra expenses, and other losses as a result of Hurricane Katrina. Shortly after Hurricane Katrina, Stewart placed Lexington, Lloyd's, and RSUI on notice of a claim on its policies.

---

[6] See Local Rule 56.2.

On or about January 30, 2006, Lexington paid the limits of its primary policy in the amount of $10,000,000. In 2006, Stewart entered into Standstill Agreements with RSUI and Lloyd's to continue their efforts to work out resolution of Stewart's Hurricane Katrina claim. In January, 2007, Lloyd's paid to Stewart the balance of its first layer excess policy limits of $15,000,000. Neither Lexington nor Lloyd's allocated any portions of their respective payments to damage caused by particular perils. Stewart and RSUI were unable to resolve Stewart's claim against RSUI's policy and, following a $1,128,634.00 "good faith" advance payment by RSUI, this litigation arose.

*LAW AND ANALYSIS*

**I.     STANDARD OF LAW**

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003); see also id. ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.") (citing La. Civ. Code. art. 2045).[7] "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc., 180 F.3d 664, 668 (5th Cir. 1999). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code. art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a

---

[7] The parties do not dispute that Louisiana law applies to the insurance policies at issue in this case.

3

dispute in hindsight." Amoco Production, 180 F.3d at 668-69 (quoting Tx. Eastern Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." Id. at 669.

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." Cadwallader, 848 So. 2d 577, 580 (La. 2003). A court should not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." Id. "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." Id.

## II. DISCUSSION

The issues raised by the parties' motions are twofold. First, the Court must determine whether RSUI's policy excludes coverage for loss caused by the peril of flood. Second, the Court must determine whether the ACC clause limits Stewart's recovery in any way and, if so, how.[8]

---

[8] Like the parties, the Court concerns itself in the instant motions with only two relevant perils — wind and flood. This limitation is not meant to prejudice Stewart's ability to recover damages caused by any other covered or non-excluded peril; nor is this limitation meant to graft onto the ACC clause an interpretation which somehow limits Stewart to recovery solely for wind-caused loss.

*A.    Flood Exclusion*

Concerning the first issue, RSUI argues that its policy, by way of a "following form" provision which adopts the terms of Lexington's primary insurance policy,[9] excludes flood coverage pursuant to the Lexington policy's express flood exclusion. The Lloyd's policy also contains a following form provision with identical language to the provision in RSUI's policy.[10] Stewart argues that RSUI's policy, together with the underlying policies, provides aggregate flood coverage in the amount of $25,000,000.[11]

This Court's analysis begins with the "Perils Excluded" section of the Lexington policy, as adopted by the RSUI policy. That section states that the "policy does not insure against loss or damage caused directly or indirectly by any of the following excluded perils."[12] It then

---

[9] R. Doc. No. 117-6 at 10. The RSUI policy states, in pertinent part:
> In respect of the perils hereby insured against this Policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and Limits of Liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any, AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the Policy(ies) of the Primary Insurer(s) prior to the happening of a loss for which claim is made hereunder and should any alteration be made in the premium for the Policy(ies) of the Primary Insurer(s), then the premium hereon may be adjusted accordingly.

Stewart agrees that RSUI's policy is a "following form" excess policy. See R. Doc. No. 122-2 at 2.

[10] R. Doc. No. 115-7 at 4, §2. The parties did not attach the Lloyd's policy to the papers filed in connection with these two motions and do not make express reference in their briefs to specific provisions of the Lloyd's policy. The Court does note that in the "Perils Insured" section of the Lloyd's schedule, the policy states that it covers "All Risks of Direct Physical Loss or Damage including Flood . . . as per Primary Policy." R. Doc. No. 115-7 at 2, §4. The Lloyd's policy further states, in the "Excess Limit(s)" section of the schedule that it provides "USD $15,000,000 any one Policy year in respect of the peril of Flood . . . ." R. Doc. No. 115-7 at 3, §10.

[11] Stewart goes on to argue that because the underlying insurers did not allocate flood versus wind damage in their respective payments for $10,000,000 and $15,000,000, factual issues remain as to how much of the alleged $25,000,000 flood limit has been exhausted. R. Doc. No. 131 at 5-7. The Court declines to take Stewart's view that the need to resolve this apparent factual question is, standing alone, an impediment to deciding these motions. The Court's resolution of these motions goes solely to the legal interpretation of the disputed provisions in the policies. Whether Lexington and Lloyd's expressly designated portions of their payments for wind or flood is not material to determining the legal meaning and effect of the policy provisions in question.

[12] R. Doc. No. 117-3 at 35.

5

enumerates various excluded perils, including "Flood, unless specified in Section 3, Sublimits of Liability, Paragraph J., and then only for such specified amount."[13] Section 3, paragraph J sets forth a $10,000,000 sublimit of liability "[i]n the aggregate for any one policy year for the peril of Flood."[14] The Lexington policy, therefore, excludes the peril of flood, but in the same sentence creates an <u>exception to that exclusion</u> and, by reference to section 3, paragraph J, provides flood coverage up to $10,000,000.

As mentioned, RSUI's policy is subject to the same terms and conditions as the Lexington policy.[15] RSUI's policy further states in the "Perils Insured" clause that it insures against perils "[a]s defined in Primary policy issued by LEXINGTON INSURANCE CO."[16] Finally, in section 9 of its schedule, RSUI's policy states:

> Total Limits [including "Primary" and "Underlying Excess"]
> subject to annual aggregates [per layers and participation's as
> outlined in item 8 above]:
>
> $25,000,000 any one policy year in respect of the peril of Flood.

The question, therefore, is whether the RSUI policy (1) simply adopts the flood exclusion

---

[13] R. Doc. No. 117-3 at 36, §10 ¶P(2).

[14] R. Doc. No. 117-3 at 25, §3 ¶J.

[15] RSUI argues that its policy follows the form of the Lexington policy except with respect to "Limits of Liability," and that, therefore, the flood exclusion but not the $10,000,000 sublimit exception thereto are incorporated into the RSUI policy. R. Doc. No. 117-2 at 13. However, the $10,000,000 sublimit for the peril of flood is contained in the "Sublimits of Liability" section and not in the "Limits of Liability" section of the Lexington policy. <u>See</u> R. Doc. No. 117-3 at 25, §§2, 3. The Court interprets the "Limit of Liability" exception contained in the following form provision as a reference to the overall policy's limit of liability (i.e., $10,000,000) and not to a particular sublimit concerning a specific peril.

[16] R. Doc. No. 117-6 at 13.

6

as a traditional exclusion, i.e., without the $10,000,000 sublimit exception contained in the Lexington policy or the $15,000,000 sublimit exception contained in the Lloyd's policy; or (2) adopts the flood exclusion, but does so subject to the same sublimit exceptions contained in the underlying policies.[17]

Construing the policy language in light of its plain meaning, the Court finds that the latter reading of the RSUI policy is the proper one. The following form provision and the Perils Insured provision do not expressly disavow the flood sublimit contained in the Lexington policy. Instead, they would appear to adopt the flood exclusion <u>subject to</u> the $10,000,000 sublimit, i.e., with the same exception contained in the Lexington policy. RSUI has not identified a provision which persuades the Court that, in following the form of the Lexington policy, RSUI's policy somehow stripped away the $10,000,000 exception to the flood exclusion.

RSUI also argues that section 9 of its schedule serves as an independent coverage exclusion.[18] This provision, however, is best understood as <u>affording</u> coverage, while setting forth a limit thereto. The provision confirms that RSUI provides coverage "in respect of the peril of Flood," but makes clear that such flood coverage is only in the amount of $25,000,000. That said $25,000,000 "Total Limit[]" also "includ[es] 'Primary' and 'Underlying Excess'" merely clarifies that the $25,000,000 limit is not a fresh batch of flood coverage afforded solely by

RSUI. The term "including" makes clear that the $25,000,000 of flood coverage includes the

---

[17] This second option could also be phrased as follows: "Whether the RSUI policy adopts the flood exclusion but also adopts the aggregate sublimits of the underlying Lexington and Lloyd's policies."

[18] R. Doc. No. 150-4 at 2 ("Not only is flood excluded by the Lexington Primary Policy 'unless otherwise specified,' but RSUI excludes flood from its Policy by reference to Total Limits [*including 'Primary' and 'Underlying Excess'*] of '$25 million any one policy year in respect of the peril of Flood.'" (emphasis in original)).

7

Lexington and Lloyd's sublimits, <u>as adopted</u> by RSUI. Furthermore, the Court reads the language "subject to annual aggregates [per layers and participation's as outlined in item 8 above]," as recognizing that Stewart must initially meet the overall policy limits — whether through flood damage or other damage — of its underlying insurers before accessing the $25,000,000 in flood coverage, or whatever remains thereof.[19]

Meanwhile, during a telephone status conference held with the Court on June 10, 2009, RSUI's counsel argued that section 9 acknowledged three things: (1) that RSUI's policy did not cover any flood damage; (2) that the Lexington and Lloyd's policies provide $25,000,000 worth of flood coverage; and (3) that even though RSUI's policy does not cover flood, RSUI would permit flood damage to erode the underlying insurers' liability limits toward the ultimate triggering of RSUI's second excess layer. This argument essentially tracks the second paragraph of section 4 of RSUI's "Excess Physical Damage Form," which states:

> There is no recovery under this excess policy as respects those coverages which are sublimited within the primary and/or underlying excess policy(ies) to amounts less than the amount indicated in item 8 of the Schedule, however, the Insurer(s) to this excess policy recognize that the primary and underlying excess policy limits can be eroded or exhausted, wholly or partially, by application of said sublimits.[20]

---

[19] Of course, if Stewart met the overall policy limits of Lexington and Lloyd's by claiming $25,000,000 in flood damage, then nothing would remain of the $25,000,000 total limit afforded by Stewart's three insurers. This determination, however, is a factual one for the trial of this matter.

[20] R. Doc. No. 117-6 at 10, §4. Although not raised by either party, the Court notes that the following provision contained in the Lloyd's policy contemplates a similar purpose:
> For the purpose of attachment of coverage for excess layers, it is further agreed that loss involving any interest and/or peril covered in primary or underlying excess layers, but not covered in higher excess layers, shall be recognised by such excess layers as eroding or exhausting the occurrence limits of the primary and/or underlying excess layer(s). Nothing herein, however, shall be deemed to extend coverage in such layer(s) to include loss from any interest and/or peril not covered in the excess layer(s) itself.

This provision precludes recovery as against RSUI for any peril whose sublimit is "less than the amount indicated in item 8 of the Schedule."[21] RSUI, in a separate motion for partial summary judgment,[22] seeks to apply this provision to preclude recovery for those coverages sublimited to less than $10,000,000. Notably, the flood coverage sublimited to $10,000,000 is not a coverage with respect to which RSUI seeks relief in that other motion.[23] RSUI's counsel cannot, therefore, persuasively argue that section 9 of the schedule purports to achieve what section 4 of the excess physical damage form fails to achieve — namely, excluding recovery for flood while acknowledging that flood damage may erode the underlying insurers' policy limits.

In conclusion, the Court notes that, had RSUI desired to exclude flood coverage, it could have done so by way of an exclusion in its own policy rather than by complex and indirect reliance on Lexington's "exclusion with an exception." Alternatively, in stating its "Total Limits . . . subject to annual aggregates" in section 9, RSUI could have simply stated "Zero" rather than "$25,000,000."

Accordingly, insofar as RSUI's motion seeks a declaration that its policy excludes coverage for damage caused by the peril of flood, that motion is **DENIED**. Instead, the Court interprets the relevant policy provisions as follows: (1) the RSUI policy, together with the

---

R. Doc. No. 115-7 at 6, §10. Nothing in this provision precludes the outcome reached by the Court in resolving these motions. Since the Court rejects the argument that flood is a "peril not covered in the excess layer[]," the language preventing extension of coverage for flood into RSUI's policy is not operative.

[21] The Court notes, without deciding, that the reference to "the amount indicated in item 8" is ambiguous as item 8 of the schedule includes no fewer than eight possible "amounts."

[22] R. Doc. No. 115.

[23] R. Doc. No. 115-2 at 5-6, 8.

9

Lexington and Lloyd's policy, provides coverage up to $25,000,000 for damage caused by the peril of flood; (2) the $25,000,000 flood coverage limit may be eroded by any flood damage sustained by Stewart and paid by Lexington, Lloyd's, or RSUI; such that (3) to the extent Lexington, Lloyd's, and/or RSUI (in its "good faith" advance) have made payments for flood damage which, in the aggregate, do not amount to $25,000,000, Stewart may recover for flood damage for the remainder of the $25,000,000 limit.

B.  *ACC Clause*

Two issues respecting interpretation of the ACC clause remain for resolution by the Court: (1) whether the ACC clause is ever applicable and, if so, when; and (2) whether the ACC clause, if and when it applies, precludes Stewart from recovering for damage caused by wind prior to the arrival of any flood. These questions of interpretation are essentially those posed by Stewart's motion for partial summary judgment.

The ACC clause whose effect is disputed by the parties is contained in the Lexington policy and adopted by the RSUI policy through the following form provision. The specific subject of the dispute is the nature of the ACC clause's interaction with the nominal flood exclusion[24] contained in the Lexington policy. The ACC clause, in pertinent part, states:

> This policy does not insure against loss or damage caused directly or indirectly by any of the following excluded perils. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
> . . . .
> P.   loss or damage caused by or resulting from:
> . . .

---

[24] The Court employs the term "nominal" because, as discussed supra, the flood exclusion contains an exception which in turn affords flood coverage pursuant to specified limits.

> (2) Flood, unless specified in Section 3, Sublimits of
> Liability, Paragraph J., and then only for such specified
> amount
> (3) any and all loss from any other cause when occurring
> concurrently or sequentially with . . . Flood . . . .[25]

The Fifth Circuit has enforced ACC clauses with similar language in at least three cases. See Bilbe v. Belsom, 530 F.3d 314, 317 n.3 (5th Cir. 2008) (applying Louisiana law); Tuepker v. State Farm Fire & Casualty Co., 507 F.3d 346, 353-54 (5th Cir. 2007) (applying Mississippi law); Leonard v. Nationwide Mut. Ins. Co., 499 F.3d 419, 429-31 (5th Cir. 2007) (applying Mississippi law). In Tuepker, the court interpreted the State Farm policy's ACC clause[26] to mean that "any damage caused _exclusively_ by a nonexcluded peril or event such as wind, not concurrently or sequentially with water damage, is covered by the policy, while all damage caused by water or by wind acting concurrently or sequentially with water, is excluded."

---

[25] R. Doc. No. 117-3 at 35-37.

[26] The ACC clause in Tuepker stated as follows:
> We do not insure under any coverage for any loss which would not have
> occurred in the absence of one or more of the following excluded events. We do
> not insure for such loss regardless of: (a) the cause of the excluded event; or (b)
> other causes of the loss; or (c) whether other causes acted concurrently or in any
> sequence with the excluded event to produce the loss; or (d) whether the event
> occurs suddenly or gradually, involves isolated or widespread damage, arises
> from natural or external forces, or occurs as a result of any combination of these.

Tuepker, 507 F.3d at 351. Water Damage, including flood, was an "excluded event" in the Tuepker policy. Id.
    Meanwhile, the ACC clause in Leonard read as follows:
> We do not cover loss to any property resulting directly or indirectly from any of
> the following. Such a loss is excluded even if another peril or event contributed
> concurrently or in any sequence to cause the loss . . . .
>
> . . . Water or damage caused by water-borne material . . . .

Leonard, 499 F.3d at 430. The terms of the Leonard clause are nearly identical to those contained in the ACC clause in this case.

11

Leonard, 507 F.3d at 354 (emphasis in original).

The Leonard court described the three categories of property damage typically at issue in Hurricane Katrina cases: "(1) damage caused exclusively by wind; (2) damage caused exclusively by water; and (3) damage caused by wind 'concurrently or in any sequence' with water." Leonard, 499 F.3d at 430. In a traditional homeowner's policy, wherein flood damage is expressly and absolutely excluded from coverage, the operation of an ACC clause is, therefore, straightforward and as described in Tuepker and Leonard: "[t]he only species of damage covered under the policy is damage caused exclusively by wind." Id. (emphasis in original).

In this case, the nominal flood exclusion is atypical in that it contains an exception which provides coverage up to a certain limit. The Court finds that the flood exclusion contained in paragraph P(2) and prefaced by the ACC clause cannot be read to create an outcome in which flood coverage is afforded by RSUI, but that said coverage is simultaneously excluded pursuant to the ACC clause. Having found that the RSUI policy affords coverage for flood damage, RSUI's argument that the ACC clause limits Stewart to recovery for damage caused exclusively by wind cannot be sustained. This reading is not inconsistent with Leonard and Tuepker. To be clear, those cases involved absolute flood exclusions which contained no exceptions. See Tuepker, 507 F.3d at 346 ("We conclude that under Mississippi law, the Water Damage Exclusion is valid and that the storm surge that damaged the Tuepkers' home is a peril that is unambiguously excluded from coverage under State Farm's policy."); Leonard, 499 F.3d at 424 ("Like most homeowner's policies, the Leonards' policy unambiguously excludes damage caused by water — including flooding — in a broadly worded exemption clause . . . .").

The so-called flood exclusion in this case is only nominally an "exclusion." As the

preceding section details, it is better characterized as imposing a limit on the amount of flood damage recoverable by Stewart. This Court declines to enforce the instant ACC clause to preclude recovery for flood damage when the RSUI policy affords coverage for that same peril. Accordingly, insofar as RSUI's motion seeks a declaration that Stewart may only recover damages caused exclusively by wind, that motion is **DENIED**.

Meanwhile, the terms of paragraph P(3), which contains anti-concurrent language independent of paragraph P(2) and the prefatory ACC clause language, compel a different conclusion. Whereas paragraph P(2) would exclude damage caused by flood "regardless of any other cause or event that contributes concurrently or in any sequence to the loss,"[27] paragraph P(3) would exclude damage caused by wind "when occurring concurrently or sequentially with . . . Flood."[28] By reference to the Leonard categories, this interpretation of paragraph P(3) permits Stewart to recover (1) damage caused exclusively by wind; and (2) damage caused exclusively by flood; but not (3) damage caused by wind concurrently or sequentially with flood.[29] See Leonard, 499 F.3d at 430. The Court recognizes the unusual nature of such an interpretation, but finds it supported by the policy language.

Accordingly, insofar as Stewart's motion seeks a declaration that the ACC clause only applies to flood losses in excess of $25,000,000, the motion is **DENIED**. Instead, the Court finds that the ACC clause applies to all flood losses which occur concurrently or sequentially

---

[27] R. Doc. No. 117-3 at 35, §10.

[28] R. Doc. No. 117-3 at 37, ¶P(3).

[29] The Court notes that this third category could also be understood to include damage caused by flood concurrently or sequentially with wind. This is so because the exclusion for sequentially occurring perils does not further specify whether a particular peril must occur before the other.

13

with any other cause.  Insofar as Stewart's motion seeks a declaration that <u>any</u> damage caused by wind is recoverable, regardless of whether flood also caused such damage, the motion is also **DENIED**.  Instead, the Court finds that Stewart's recovery for wind damage is limited to that damage caused exclusively by wind or, put differently, to damage caused by wind which <u>did not</u> occur concurrently or sequentially with flood.

### III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that RSUI's motion for partial summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Stewart's motion for partial summary judgment is **DENIED**.  To the extent that this Court has made findings with respect to the proper interpretation of the policy provisions contested by the parties' motions, those findings are the law of the case, unless such findings are reversed on appeal.

Pursuant to 28 U.S.C. § 1292(b), this Court finds that this order and reasons involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order and reasons may materially advance the ultimate termination of this ligation.  <u>See</u> <u>Linton v. Shell Oil Co.</u>, 563 F.3d 556, 557-58 (5th Cir. 2009).  The Court's finding of substantial ground for difference of opinion is based upon: (1) the complexity of the multiple insurance policy provisions at issue in these motions; (2) the lack of authority addressing the interaction between a "following form" provision and a flood exclusion which contains an exception providing coverage; and (3) the competing interpretations of section 9 of the schedule in the RSUI policy.  The Court's finding that an immediate appeal may

materially advance the ultimate termination of this litigation is based upon: (1) the parties' statements to that effect; (2) the Court's understanding that the resolution of whether flood damage is covered, in any manner, will significantly affect the amount of damages recoverable by Stewart; and (3) the significant amount of time, expense, and effort that will be consumed if an immediate appeal is not permitted and this Court's ruling with respect to the issues resolved herein is ultimately held to be incorrect.

New Orleans, Louisiana, June 15, 2009.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**